## No. 17,297.

ALLEY *v.* TROUTDALE HOTEL AND REALTY COMPANY ET AL.
(279 P. [2d] 1060)

Decided February 14, 1955.  Rehearing denied March 7, 1955.

Mr. DARWIN D. COIT, Mr. LANSFORD F. BUTLER, for plaintiff in error.

Messrs. JANUARY & YEGGE, Mr. WILLIAM E. DOYLE, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will herein refer to the parties as they appeared in the trial court, where plaintiff in error was plaintiff and defendants in error were defendants.

Plaintiff in his complaint alleged that he suffered personal injuries as a result of the negligence of de-

fendant Burchett, who was the agent of the Troutdale Hotel and Realty Company, and was acting within the course of his employment at the time of the incident of which complaint is made. He further alleged that while he was a guest of defendant hotel company on July 10, 1950, he became a passenger for hire on a horse-drawn wagon operated by defendants; that defendants carelessly and negligently operated and drove said vehicle while he was a passenger thereon; and that as a result of such negligence he was severely and permanently injured in that he suffered fractured and dislocated shoulders, a compression fracture of the eighth dorsal vertebra, "and was otherwise injured as a result of which he has suffered and will continue to suffer great pain of body and mind, was and will be compelled to incur bills for necessary service of surgeons, hospitals, doctors, nurses and other expenses, was and will be prevented from attending to his business, and will be permanently disabled."

Defendants filed separate answers in which all material allegations of the complaint were denied, and in addition they alleged affirmative defenses as follows: contributory negligence, assumption of risk, unavoidable accident, and that the injuries sustained by plaintiff were proximately caused by the negligence of some person not in the employ of defendant hotel company.

The case was tried to a jury; a verdict was returned in favor of defendants; judgment was entered thereon; and plaintiff, seeking reversal of the judgment, brings the cause to this Court by writ of error.

Evidence offered by plaintiff tended to establish that defendant company operated a horse-drawn wagon or hayrack which was in charge of defendant Burchett; that while a guest of the hotel he went on a hayrack ride in the course of which the wagon was driven over very rough terrain; and that he was struck by an overhanging limb of a tree resulting in the fractures, damage and

injuries of which complaint was made, and for which judgment was sought.

Among other statements the attorney for defendant hotel company, in his opening remarks to the jury, said:

"The evidence will show, ladies and gentlemen of the jury, that early in the morning of the 11th of July this man had an epileptic seizure, that he was taken to the Colorado General Hospital, and the evidence that was observed there at the Colorado General Hospital indicated that that was what he had; that he made no complaint on having had any injury; that he was later removed to the General Rose Memorial hospital and again he was treated for this epileptic seizure * * *.

"I think the evidence will show that an epileptic seizure can produce fractures of this kind. I think that you will conclude finally that the evidence is just as strong to support the conclusion that this man suffered fractures as a result of the illness or seizures, as it is from his having received injury, and perhaps, stronger."

Plaintiff's wife was called as a witness in his behalf and testified, inter alia, that in the early morning following the trip on the hayrack, during which her husband was injured, he was suffering intense pain and was taken from the mountain hotel to the Colorado General Hospital in Denver; that due to the fact that they were residents of the State of Oklahoma plaintiff was not admitted to the Colorado General Hospital and was immediately taken to the nearby General Rose Hospital. At each of these institutions she talked to Dr. Robert W. Truscott, a specialist in internal medicine, and gave him certain information which he wrote down as part of the case history. There is no showing that any portion of this history was supplied by plaintiff himself, or that he knew anything about the information given to the doctor by any member of his family. Upon cross-examination of Mrs. Alley she stated, inter alia, that plaintiff previously had had trouble with a kidney stone; that at one time there was an abdominal operation relating to a

tumor or cancer; and that a doctor in Oklahoma, who subsequently was proven to have been involved as the head of a dope ring, had told her that plaintiff experienced an epileptic seizure seven years prior to the time of the incident involved in the present case. The following testimony was given: "Q. Did you tell Dr. Truscott that your husband had had a convulsion? A. No, sir. Q. Now, did you say anything to Dr. Truscott about your husband having had a convulsive seizure seven years before? A. I didn't say 'convulsion.' I said the doctor told us that he had had a seizure. Q. Seven years before? A. Yes, sir."

Dr. Truscott was called as a witness for defendants and testified in substance that he saw plaintiff and members of his family on the morning of July 11, 1950; that at the Colorado General Hospital, "I just looked at him. I did not examine him there"; that plaintiff was taken to the General Rose Memorial Hospital where he was admitted; that there were small capillary hemorrhages over the front part of the chest and over the shoulders; "There was marked tenderness of both shoulder joints and Mr. Alley was unable to move his arm because of the pain"; and that he obtained a history "from the family."

Counsel for plaintiff objected to statements made by members of the family, other than plaintiff, on the ground that said statements were hearsay. The objection was overruled and Dr. Truscott then testified that he had recorded in the history that there had been "one similar previous attack seven years ago," and this statement unquestionably referred to an epileptic seizure; that, "The conclusion that was reached at that time was a tentative one and was that Mr. Alley *may have had a convulsive seizure.*" (Emphasis supplied). The following testimony, inter alia, was introduced: "Q. Is that still your opinion that he had a convulsive seizure? A. I said that he may have. I did not see him in the seizure and therefore cannot state that he had one. Q. Did all the

128

evidence support that? A. The evidence was compatible with it. * * * A. I think I have already stated that the tentative diagnosis was that *he may have had a convulsive seizure*. Q. An epileptic seizure — is that the same thing as a convulsive seizure? A. I would say that Mr. Alley wasn't under my care a sufficient. time to say whether it was actually — that we could make a diagnosis of epilepsy. Q. And that is what you made at that time, though, didn't you. A. No, I made a diagnosis of a — well, we will say he may have had a convulsive seizure." (Emphasis supplied). At no place did Dr. Truscott, or any other physician, testify that in his opinion, under all the facts and circumstances observed, plaintiff suffered the fractures, of which complaint was made, as a result of an epileptic seizure. He testified that the pain suffered by plaintiff when being examined, and other symptoms observed at the time, could have been caused by a trauma of sufficient force to cause fractures.

At the conclusion of the testimony of Dr. Truscott, counsel for plaintiff moved the court to strike all the testimony of the doctor dealing with any tentative diagnosis or any other diagnosis concerning the possibility of an epileptic seizure. The grounds upon which this motion was based were, in substance, that the only basis on which the suggestion of epilepsy rested was that of the hearsay statement attributed to plaintiff's wife; that the doctor had not qualified himself to make a diagnosis of epilepsy; that such a diagnosis was based on conjecture and possibilities; and that there was no evidence sufficient to warrant the jury to consider the question of an epileptic seizure. The trial court overruled this motion to strike the doctor's testimony in the particulars mentioned.

Other pertinent facts are that X-rays were taken, and from an examination made forthwith the fractures were not discovered by those who first examined the plates. It is admitted, however, that a careful examination of these X-ray plates would have revealed the fractures.

No explanation appears in the record as to why the examining physicians did not discover them. Plaintiff was discharged from the hospital the same day and permitted to return to Oklahoma where he was treated for the fractures by physicians who testified that in their opinion the breaks were caused by a traumatic injury, such as a blow from the limb of a tree might have inflicted, and, in their opinion, were not caused and could not have been caused by an epileptic seizure. Plaintiff himself denied that he, at any time in his life, had been the victim of an epileptic seizure, and there is no evidence, except as above set forth, tending in the least to establish the fact of any epileptic history.

Counsel for plaintiff, among other grounds upon which reversal of the judgment is sought, argue that the admission of the testimony of Dr. Truscott relating to the subject of epileptic seizures, and the refusal of the trial court to strike the same, was prejudicial error.

Question to be Determined.

*Where a jury is informed, by opening statement of counsel, that the defense in a personal-injury case would prove that the injuries of which plaintiff complained were proximately caused by an epilpetic seizure suffered by him, but offered no evidence other than hearsay to prove such seizure, is the testimony of a physician, based largely on such hearsay, to the effect that plaintiff "may have had a convulsive seizure" or that the evidence in the case "was compatible" with the theory that the injuries "may" have been cuased by an epileptic seizure, competent for consideration by the jury upon the question of the cause of the injuries?*

The question is answered in the negative. There is no competent evidence in the record in the instant case tending to establish as a fact that plaintiff had suffered an epileptic seizure prior to the date on which he claimed to have sustained injuries as a result of the negligence of defendants. Although no objection was made to questions directed to plaintiff's wife relating to the alleged

report of an epileptic seizure seven years prior to the date of the incident involved in this case, all of them called for hearsay evidence if the purpose thereof was to establish the fact that such a seizure had taken place. This testimony certainly was not competent to prove the fact of a prior seizure. It is very apparent from the record that Dr. Truscott relied principally on this hearsay statement in arriving at his tentative diagnosis that plaintiff "may have had a convulsive seizure." He did not give it as his opinion that the injuries sustained were a result of epilepsy. This testimony was no more competent than a recitation of countless other means by which fractures of a person's shoulders might possibly be incurred.

It also is undisputed that the tentative diagnosis of Dr. Truscott was made at a time when he was not aware of the fractures. The evidence given by him concerning the possibility of an epileptic seizure as the proximate cause of the fractures was conjectural, and, when considered in the light of the defense as outlined by the opening statement of counsel, was prejudicial. The jury might well have believed from the evidence thus erroneously admitted that the proximate cause of the injuries sustained by plaintiff was an epileptic seizure. We have repeatedly held that where findings of fact are based upon conjecture and possibilities only, no judgment based upon such findings can properly be sustained. *United States Fidelity & Guaranty Co. v. Industrial Commission,* 122 Colo. 31, 219 P. (2d) 315.

The judgment accordingly is reversed and the cause remanded for a new trial.